**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MELHER TRANSPORT, INC., et al.,**

      **Plaintiffs,**

  v.                                          Civil Action 2:21-cv-1293
                                                  Magistrate Judge Kimberly A. Jolson

**WESTFALL TOWING LLC,**

      **Defendant.**

**OPINION AND ORDER**

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c) (Doc. 14), is before the Court on Plaintiffs Melher Transport, Inc. and Conexion Logistics LLC's Partial Motions to Dismiss for Failure to State a Claim (Docs. 18, 19). For the following reasons, Plaintiffs' Motions are **DENIED**.

**I.    BACKGROUND**

This case arises out of a November 20, 2020, traffic incident involving a commercial vehicle. Plaintiff Conexion Logistics LLC ("Conexion") hired Plaintiff Melher Transport, Inc. ("Melher Transport") to deliver fourteen packs of poplar lumber from Marietta, Ohio to El Paso, Texas. (Doc. 1 at ¶¶ 8–11). Conexion leased Melher Transport a semi-truck and semi-truck trailer for the job. (*Id.*). But before making it out of Ohio, the lumber shifted forward and punctured the front of the trailer. (*Id.*, ¶ 13).

Law enforcement responded and found the semi-truck and trailer blocking an entire lane of Ohio State Route 7. (*See* Doc. 11-1). The responding officers requested the services of Defendant Westfall Towing LLC ("Westfall Towing"), (Doc. 11-2 at ¶ 3), and Ohio State Highway Patrol Troopers then authorized Defendant to tow the vehicles and cargo to its lot (*Id.*, ¶ 7). The

Troopers inspected the semi-truck and trailer at the lot, deeming them "out-of-service" pending repair. (*Id*., ¶ 10). According to Defendant, Melher Transport was made aware of the situation, and its representative, Miguel Melendez, asked Defendant to remove the lumber from the trailer and store it indoors to preserve its condition. (*Id*., ¶ 11). Defendant says it agreed to do so, noting its $400 daily storage fee. (*Id*., ¶ 12).

Several days later, Defendant issued an invoice for $37,715. (Doc. 8 at 2–3). On top of towing and storage fees, the bill included other items, notably, $5,200 for labor. (*Id*.). Plaintiffs, believing the amount excessive, refused to pay, and have since refused to pay subsequent bills—most recently, for $120,000. (Doc. 8 at 4). In an attempt to negotiate, Plaintiffs offered to pay Defendant $30,000, the towing insurance coverage on the semi-truck. (*Id.* at 3–4). Defendant refused (*see id*.), claiming the bill was high because the lumber was not properly secured, could not be moved with a forklift, and Defendant had to rely on manpower to transfer the lumber to its storage facilities (Doc. 11 at 2–3).

After the property sat in storage for roughly four months—and the parties were unable to resolve the matter—Plaintiffs filed suit. (Doc. 1). Relying upon diversity jurisdiction, Plaintiffs brought state law claims for replevin, conversion, and civil theft. (*See generally id*.). Defendant, having its own view of the matter, filed counterclaims against Plaintiffs, as well as Third-Party Defendant, Baillie Lumber Co., L.P., for breach of agreement, unjust enrichment, and declaratory judgment. (Doc. 10). Plaintiffs have moved to dismiss the counterclaims for breach of agreement and declaratory judgment. They did so in two separate motions. (Docs. 18, 19).

Shortly after filing suit, Plaintiffs moved for an order of possession of property (Doc. 8), which was denied (Doc. 23). Through negotiation, however, the parties were able to arrive at an agreement, reflected in their joint motion for order of possession (Doc. 34), which was granted

(Doc. 35). Subsequently, Defendant responded to Plaintiffs' Motions to dismiss (Doc. 43), and Plaintiffs replied (Doc. 45). Plaintiffs' Motions are fully briefed and ripe for consideration. (*See* Docs. 18, 19).

## II.  STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

## III.  DISCUSSION

First, the Court notes that the Partial Motion to Dismiss Defendant's counterclaim for declaratory judgment (Doc. 19) is now moot. Defendant initially sought declaratory judgment for transfer of title for the truck and trailer, arguing that it had a possessory lien interest in both. (Doc. 10 at 8–9). But the parties later reached an agreement documented in their joint motion for order

of possession (Doc. 34), which the Court granted (Doc. 35). Under that order, Defendant returned the truck and trailer, and Plaintiffs filed a replevin bond. (Doc. 37-1).

Defendant acknowledges in its response that because it no longer possesses the equipment, it can no longer pursue its declaratory judgment counterclaim. (Doc. 43 at 4). Thus, it dismissed that counterclaim. (Doc. 44). In reply, Plaintiffs address only their Motion related to the breach of contract claim and thus appear to agree that the claim for declaratory judgment is now moot. (*See* Doc. 45). Accordingly, this Court finds Plaintiffs' Partial Motion to Dismiss as to Defendant's counterclaim for declaratory judgment (Doc. 19) moot, and it is therefore **DENIED**.

In their other Partial Motion to Dismiss (Doc. 18), Plaintiffs make two arguments for dismissal of the counterclaim for breach of contract: (1) Defendant is merely conclusory in its allegations, does not provide specific, well-pleaded facts, and therefore does not meet the pleading standard; and (2) it is improper for the Defendant to proceed on both breach of agreement and unjust enrichment claims at this stage. The Court evaluates each argument in turn.

1. *Meeting the Pleading Standard*

The parties dispute whether the breach of agreement claim satisfies the pleading standard defined in *Twombly* and *Iqbal*. Plaintiffs say that Defendant pleaded "**no facts** regarding a meeting of the minds between the parties regarding [Defendant]'s tow and storage rates for the truck and trailer[,]" and "mere conclusory allegations that an implied contract existed . . . ." (Doc. 18 at 2) (emphasis in original). In other words, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are insufficient." (Doc. 45 at 2 (quoting *Iqbal*, 556 U.S. at 678)). Defendant responds that, "Paragraph 9 of the Counterclaim details the facts with respect to an express contract between [Defendant] and Plaintiffs regarding certain of the services related to the cargo." (Doc. 43 at 3). So, Defendant says, it pleaded "factual content that allows

4

the court to draw the reasonable inference that the [Plaintiffs are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).  The Court agrees that Defendant has met the pleading standard.

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citations omitted).  Further, the existence of a contract, whether implied-in-fact or express, hinges upon proof of the elements of a contract; those being: offer, acceptance, consideration, and a meeting of the minds. *Med. Mut. of Ohio v. Air Evac EMS, Inc.*, 341 F. Supp. 3d 771, 779.  "In an express contract, the assent to the contract's terms is formally expressed in the offer and acceptance of the parties."  *Byler v. Air Methods Corp.*, 823 Fed. App'x 356, 362 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Reali, Giampetro & Scott v. Society Nat'l Bank*, 133 Ohio App.3d 844, 729 N.E.2d 1259, 1263 (1999)).  But in an implied-in-fact contract, the meeting of the minds is demonstrated by the circumstances surrounding the parties' transaction.  *Id.*

When it comes to transport and storage of the truck and trailer, the parties disagree to what extent the circumstances surrounding their transaction give rise to an implied-in-fact contract.  (*See* Docs. 18, 43, 45).  Still, it is clear that that Defendant alleges an express contract exists regarding the transport and storage of the cargo.  (Doc. 43 at 3).  In its pleading, Defendant states that it cleared the truck, trailer, and cargo from the roadway.  Then:

> . . . [R]epresentatives of Melher [] requested Westfall to remove the cargo from the trailer and store the cargo indoors to preserve its condition. Westfall informed Melher that the cost of the transload would be billed hourly based on the amount of time the transload required, then daily storage charges of $400 would accrue on the cargo. Melher agreed to pay these charges and based on that agreement Westfall completed the transload of the cargo into an indoor storage facility.

(Doc. 10 at 6). Defendant thus alleges the basic framework of an express contract: offer and acceptance.

Indeed, according to its pleading, Defendant offered its services at a rate ("Westfall informed Melher that the cost of the transload would be billed hourly . . ., then daily storage charges of $400 would accrue . . ."), and Plaintiff Melher Transport accepted ("Melher agreed to pay these charges . . ."). (*Id.*). Further, Defendant offered factual content giving rise to the inference that an express contract existed. Namely, Defendant alleges that Melher Transport asked Westfall Towing to remove and store the lumber "indoors to preserve its condition[,]" and that there was an offer and acceptance for the transport and storage of that lumber at an agreed-upon price. (*Id.*).

This makes the instant action distinct from a case like *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich., Inc.*, 721 F. Supp. 2d 663 (N.D. Ohio 2010), which Plaintiffs cite favorably in their Motion. (Doc. 18 at 3). There, the court found that plaintiffs had failed to establish a claim for breach of an oral contract where their Complaint "[did] not mention, suggest, or imply the existence of an oral agreement of any kind between the parties." *Flex Homes*, 721 F. Supp. 2d at 670. The instant action—where a conversation has been alleged in which the parties discussed and agreed to services and rates—is distinguishable. And Defendant has sufficiently pled the existence of a contract.

The same is true for the remaining elements of a breach of contract claim. First, Defendant alleges that it upheld its end of the bargain: "[B]ased on [the] agreement Westfall completed the transload of the cargo into an indoor storage facility." (Doc. 10 at 6). Next, Defendant claims that Plaintiffs have not: "Melher has failed to make payment in full to Westfall for the services performed." (*Id.* at 7). Finally, Defendant says it suffered damages as a result of the breach:

6

"Westfall has been damaged by providing Melher with [services] for which Melher has not paid." (*Id.*).

In sum, Defendant has satisfied its pleading standard.

2. *Alternative Pleading*

Plaintiffs also challenge the breadth of Defendant's counterclaims. In reply, they argue that it would be improper for the Court to allow Defendant to proceed under both a contract theory and an unjust enrichment theory. And so they argue that if the Court allows the breach of contract counterclaim to survive, it then must dismiss the unjust enrichment counterclaim. (Doc. 45 at 2–4). The Court disagrees.

"It is well-established that Ohio law does not permit *recovery* under the theory of unjust enrichment when an express contract covers the same subject." *Teknol,, Inc. v. Buechel*, 1999 WL 33117391, at *2 (S.D. Ohio Aug. 9, 1999) (citing *Ullman v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947) (syllabus ¶ 4)). Yet, this restriction on recovery "does not stand for the proposition that a plaintiff is precluded from pleading unjust enrichment in the alternative, particularly where there is some dispute over the existence or enforceability of the agreement." *Id.* "Rather, it provides that a plaintiff may not improve upon an improvident agreement . . . by seeking additional recovery under the theory of unjust enrichment." *Id.*

*Teknol* "is still good law, and this Court has continued to adopt, albeit not consistently, [the] position [that permits alternative pleading] in reviewing unjust enrichment claims at the motion to dismiss stage." *Highman v. Gulfport Energy Corp.*, No. 2:20-cv-1056, 2020 WL 6204344, at *3 (S.D. Ohio Oct. 22, 2020) (Morrison, J.). This is particularly necessary when the scope of the parties' agreement must still be developed in discovery. *Id.*; *accord Cunningham Prop. Mgmt. Trust v. Ascent Resources-Utica, LLC*, 351 F. Supp. 3d 1056, 1066 (S.D. Ohio 2018)

(Sargus, J.); *Price v. Gulfport Energy Corp.*, No. 2:20-cv-1057, 2020 WL 5433683, at *4 (S.D. Ohio Sep. 10, 2020) (Marbley, J.).  Here, the scope—even the existence—of the agreement between the parties is disputed and remains to be developed in discovery.

While Plaintiffs cite several cases in support of their argument that alternative pleading should not be allowed, many of those cases are in a different procedural posture than this case. (Doc. 45 at 3); *Sammartino v. Eiselstein,* 7th Dist. No. 08MA211, 2009 WL 1581186 (Ohio Ct. App. June 3, 2009) (reviewing the final judgment of a trial court); *Weiper v. W.A. Hill & Assocs.*, 104 Ohio App. 3d 250, 661 N.E.2d 796 (1995) (reviewing a trial court's summary judgment); *Miami Valley Paper, LLC v. Lebbing Eng'g & Consulting GMBH*, No. 1:05-cv-00702, 2009 WL 818618 (S.D. Ohio Mar. 26, 2009) (granting summary judgment).  Notably, Plaintiffs rely on a case which dismissed an unjust enrichment claim at summary judgment but had previously preserved that same claim when ruling on a Rule 12(c) motion.  *Miami Valley Paper*, 2009 WL 818618, at *12 ("While the Court declined to dismiss Plaintiff's claim for unjust enrichment earlier in the proceedings, the Court finds that it is now appropriate to dismiss the claim."); *see also Miami Valley Paper, LLC v. Lebbing Eng'g & Consulting GMBH*, No. 1:05-cv-00702, 2006 WL 2924779, at *3 ("While it is well-established that Ohio law does not permit *recovery* under the theory of unjust enrichment when an express contract covers the same subject . . . it is the opinion of the Court that a plaintiff may set forth both causes of action as alternative theories . . . .").

Though Plaintiffs also refer to two cases in the motion-to-dismiss posture, those cases arise under different factual contexts than the case here.  (Doc. 45 at 3); *Klusty v. Taco Bell Corp.*, 909 F. Supp. 516 (S.D. Ohio 1995); *B. & V. Distrib. Co., Inc. v. Dottore Cos., LLC*, No. 1:05-cv-2900, 2006 WL 1134225 (N.D. Ohio Apr. 26, 2006).  Those cases both involved allegations of express written contracts that covered the totality of the at-issue performance.  *Klusty,* 909 F. Supp. at 521

8

(holding that an unjust enrichment claim should be dismissed when it concerned the same three construction projects that plaintiff alleged were governed by express written contracts); *Dottore*, 2006 WL 1134225, at *5 ("A claim of unjust enrichment is not applicable when the parties are bound by an express written agreement."). Here, though an express agreement is alleged, it is an oral agreement, not a written one, and as such, its existence and scope are still hotly disputed. It would therefore be improper to dismiss the alternatively pled unjust enrichment claim at this stage of the proceedings.

Accordingly, Plaintiffs' Partial Motion to Dismiss as to Defendant's counterclaim for breach of agreement (Doc. 18) is **DENIED**.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs' Partial Motions to Dismiss (Docs. 18, 19) are **DENIED**.

IT IS SO ORDERED.


Date:  August 30, 2021                              /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE

9